# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| LACHARMON HARRIS | CASE NO. 3:18-CV-00709 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| DRAX BIOMASS INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending here is a Motion for Summary Judgment [Doc. No. 30] filed by Defendant Drax Biomass, Inc. ("Drax").  Plaintiff Lacharmon Harris ("Harris") has filed an opposition [Doc. No. 34].  Drax has filed a reply [Doc. No. 37].

For the following reasons, the Court GRANTS Drax's Motion for Summary Judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Drax is a manufacturer of compressed wood pellets.  Drax hired Harris, who is African-American, as a log crane operator on June 23, 2014.  In the latter part of January 2015, Harris was moved into the position of chipper/debarker operator.  Harris was responsible for all aspects of the wood yard operations, including maintaining the equipment and performing administrative functions.  [Doc. No. 30-6].  He operated heavy machinery, including a log crane, a chipper/debarker, and other mobile equipment.  [Doc. No. 30-7].

### A.    Drax's Contentions

Drax alleges that Harris was at fault in a series of incidents which resulted in damage to company equipment.  On September 14, 2015, Harris allegedly caused damage to company equipment while unloading a contract hauler. When Harris positioned his crane, he lowered the grapple too far down and began closing it and raising it at the same time. The grapple caught the

lip of the log trailer bending it upward and damaging it. This incident caused damage of approximately $2,500.00 [Doc. No. 30-8].

Two days later, Harris had another incident that resulted in damage to company equipment. While removing wood from a log trailer, he did not position the grapple correctly which resulted in a stake being partially crushed [Doc. No. 30-9].

On October 12, 2015, Harris had another incident that resulted in damages estimated to be $3,500.00. In this incident, he was removing wood from a trailer. Proper procedure required that he wait for a signal from the driver prior to positioning the grapple. Harris, however, did not wait on the signal and, as a result, he did not position the grapple correctly, resulting in damage to a trailer [Doc. No. 30-10].

On November 4, 2015, Harris had another incident that caused damage to company equipment resulting in a written warning. His supervisor, Bobby Cooper ("Cooper"), who is white, noted that there was damage to the umbilical cable on the log crane grapple and that the rotate function on the equipment had stopped working. However, Harris continued to use the equipment, resulting in additional damage to the equipment. Harris agreed with the supervisor's statement as to what occurred but stated the incident occurred because he was "under the influence" of blood pressure medicine [Doc. No. 30-11].

Following the November 4, 2015 incident, Harris was reassigned to chipper operator, a position in which an individual loads logs into equipment to produce wood chips. On December 7, 2015, Harris was cited for an incident which Drax contends could have seriously injured his co-workers. When a crane operator is operating his equipment, he is required to ensure that others are not in the vicinity to avoid harm to them. Everyone is required to be in a "safety shelter" while logs are being unloaded. Nevertheless, Harris operated his crane while co-

workers were in the immediate vicinity of the crane and were not in the "safety shelter." When Cooper asked him why he had operated the crane when the other individuals were not in the safety shelter, Harris responded that the other employees were "grown men" and were "just going to do what they want to do." Cooper was concerned by Harris' apparent lack of regard for his co-workers' safety while he was operating the crane [Doc. No. 30-5]. This action resulted in a final warning to Harris [Doc. No. 30-13].

In April 2016, Harris had two back-to-back incidents. On April 17, 2016, he left a clamp loose and hung it in the hood. This action caused the chipper disc not to be able to turn. On April 18, 2016, the next day, he again left a clamp loose and hit the chipper after restarting it, causing damage to the clamp. [*Id*.]

The final incidents involving Harris occurred on June 17, 2016, and June 27, 2016. Both incidents involved a Barko loader. On June 17, 2016, Harris damaged a Barko loader by hitting the chipper building with the boom when he was trying to clear a log jam. This action resulted in damage to a hydraulic line [*Id*.]. On June 27, 2016, he was observed hitting the building with the Barko loader once again causing further damage to the hydraulic lines and the boom assembly [*Id*.].

Following the June 2016 safety incidents, the plant manager, Richard Lamb ("Lamb"), reviewed Harris' safety record. Lamb concluded that Harris' repeated incidents of failure to properly operate heavy equipment resulting in property damage indicated that Harris simply did not want to do what was necessary to be able to operate his equipment in a safe manner. Lamb determined that it was in the best interest of Drax and its employees to end Harris' employment relationship with Drax, and Drax terminated Harris' employment on July 8, 2016 [Doc. No. 30-14].

### B.     Harris's Contentions

Harris, on the other hand, contends he was called to the office on July 7, 2016, and summarily fired with no reason given.  Harris further contends that he was trained for the log crane, but he was never trained for the chipper, despite asking Cooper for training [Harris Deposition, Doc. No. 34-5, p. 29].  During his employment, Harris had continuing problems with the equipment he was using. When he reported defects in the equipment to his supervisors, he was told to continue working to keep production up [Id., p. 26].

Harris denies that the damage incidents ever occurred, except the incident that occurred on November 4, 2015.  He contends he never saw two of the incident forms offered by Drax and that the signatures on the forms are not his signatures [Id., p. 4-8].

Harris alleges he also experienced personal difficulties with Cooper due to Cooper's treatment of African-American employees. According to Harris, Cooper told another African-American employee that a monkey could do his job; Cooper constantly hollered and cursed Harris; Cooper listed Harris as late by the time clock, but refused to verify that by showing the time to Harris; and Cooper would break up any group of African-Americans who were talking together while waiting for work to begin, telling them they needed to move around, yet Cooper would not say this to whites. This treatment led to tension and separation between whites and African-Americans [Id., pp 8-9, 12-17, 22, 23].

Harris additionally asserts that, during his tenure, he was never suspended nor was his pay ever cut as part of a disciplinary action.  Harris further states he had heard rumors before he was fired, that another employee's nephew would be hired to replace him, and after he was fired, Frank Sharkey, an African-American contractor, was placed in Harris' position for a few weeks, and then the nephew, who was white, was given Harris' job [Id., p. 18-19].

## C.    Drax's Reply to Harris's Contentions

Drax replies that it replaced Harris with Frank Sharkey ("Sharkey"), who is African-American, and that Sharkey is still employed by Drax, performing essentially the same function Harris performed during his employment [Doc. No. 37-1].  Drax further replies that Harris' negligence in following safety procedures rendered him unqualified for his job due to the safety risk he posed to himself and others, as well as the risk for further property damage he posed to the Drax premises.

## D.    Harris's Discrimination Action

On May 29, 2018, Harris brought this race discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII") against Drax and his former supervisor, Cooper [Doc. No. 1].  On August 20, 2018, the Magistrate Judge issued a Report and Recommendation that Harris's claims against Cooper be dismissed [Doc. No. 13]. On September 5, 2018, the Court issued a Judgment adopting the Report and Recommendation, and Harris's claims against Cooper were dismissed with prejudice [Doc. No. 14].  Drax is the only remaining Defendant.

Harris alleges that he was subject to racial discrimination, including verbal harassment, unfair treatment, and, ultimately, firing, by Drax.  He further alleges he was subjected to a hostile work environment.

Drax seeks summary judgment dismissing all of Harris' claims on the basis that Harris has no direct evidence of racial discrimination, that Harris cannot establish a prima facie case of racial discrimination, and that Drax had a legitimate, non-discriminatory reason for Harris' termination. The matter is briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

**B.      Analysis**

Harris asserts claims of racial discrimination against Drax under Title VII.[1]  It is "an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To establish a prima facie case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis.

**1.      Direct Evidence of Discrimination**

The Fifth Circuit has held that "direct evidence" is evidence that proves the fact asserted without inference or presumption.  *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 547 Fed. App'x. 484, 489 (5th Cir. 2013).

Harris presents certain facts in an effort to demonstrate direct evidence of discrimination: (1) his allegation that Cooper told another African American employee that "a monkey could do his job"; (2) Cooper "hollered and cursed" at Harris; (3) Cooper listed Harris as late by the time clock but refused to show him the time; and (4) Cooper asked African-American employees to disperse and get to work when they assembled in the mornings prior to work shifts beginning, yet did not do the same with white employees.

---

[1] Drax moves for summary judgment on Harris's claims under Title VII and 42 U.S.C. § 1981.  Harris has not asserted a claim under § 1981.  However, the summary judgment analysis is the same for claims of racial discrimination under Title VII and § 1981. *Pratt v. City of Houston,* 247 F.3d 601, 605 n. 1 (5th Cir.2001); *Patel v. Midland Mem'l Hosp. & Med. Ctr.,* 298 F.3d 333, 342 (5th Cir.2002); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004).

Drax argues that Harris' allegations do not constitute direct evidence because they require the Court to make a presumption or an inference of discrimination. For example, Harris admitted in his deposition that Cooper "hollered" at him on the radio because he was not performing his job correctly. Similarly, the allegation regarding the stray remark about a "monkey being able to do [another employee's'] job" cannot support a discrimination claim. Drax contends that, for such a remark (to the extent it was made) to be considered probative, the following criteria must be met:

(1) The remark must relate to the plaintiff's protected status;

(2) The remark must be proximate in time to the employment decision at issue;

(3) The remark must have been made by an individual with authority over the employment decision at issue; and

(4) The remark must be related to the specific employment decision challenged.

*See Krystek v. University of Southern Miss.*, 164 F.3d 251, 256 (5th Cir. 1999); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996). If the comments do not meet these criteria, they are merely "stray remarks" without probative value when offered either in connection with the plaintiff's *prima facie* case based on direct evidence or to demonstrate pretext. *See Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 329-30 (5th Cir. 1998) (supervisor's isolated references to an employee as a "Porch Monkey" and "Buckwheat" held to be stray remarks from which race discrimination could not be inferred).[2]

The Court finds that Drax has stated the correct standard and agrees that Cooper's alleged comments do not meet this standard. First, the alleged comments were not made in reference to Harris. Second, there is no evidence of when the comments were allegedly made – much less any

---

[2] Such remarks can serve as circumstantial evidence to support a claim of discrimination. *See Wallace v. Seton Family of Hospitals*, 777 Fed. App'x. 83, 93 (5th Cir. 2019).

evidence that it related to the employment decisions surrounding Harris. Third, Cooper had no authority to terminate Harris' employment at Drax [Doc. No. 37-2, p. 9].

Harris's evidence is little more than a personal belief that Cooper was somehow motivated by his race in disciplining him for legitimate business reasons without any evidentiary support. "Generalized testimony by an employee regarding his subjective belief that his discharge was the result of [] discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge." *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556,566 (5th Cir.1983).

Accordingly, Harris's assertion that he has provided direct evidence of discrimination has no merit.

### 2. *Indirect Evidence of Discrimination*

The Court now turns to the analysis under *McDonnell Douglass*. Under *McDonnell Douglas*, to establish a prima facie case of employment discrimination, Harris must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside his protected class, or, was treated less favorably than other similarly situated employees outside his protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2017)

If a plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either that the proffered reason was a pretext for discrimination, or

that the plaintiff's protected status was another motivating factor for the decision. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.").

Drax admits that Harris is a member of a protected class as an African-American and admits that Harris's employment was terminated. However, Drax contends that Harris cannot establish a *prima facie* case of racial discrimination because he cannot prove the second and fourth elements laid out in the *McDonnell Douglass* framework.

Assuming arguendo that Harris could show that he was qualified, the Court finds that he has failed to make out a prima facie case of the fourth element, that he was replaced by someone outside his protected class, or, was treated less favorably than other similarly situated employees outside his protected group.

### a. Replaced by Someone Outside His Protected Class

Harris admits that his initial replacement, Sharkey, is African American, but claims he was only temporarily placed in Harris's former position. In support of that argument, he offers only his own unsupported deposition testimony that word was going around that Cooper wanted to get his friend's son hired. Drax, on the other hand, has produced summary judgment evidence that Sharkey is still employed by Drax performing essentially the same functions Harris performed during his employment. This evidence is unrefuted by Harris [Doc. No. 37-1, p.3].

Therefore, Harris's claim that he was replaced by someone outside his protected class has no merit.

### b. Treated Less Favorably

Harris argues that he was treated less favorably than white employees because there were two white employees who allegedly had incidents where they damaged property but were not cited and terminated.

Similarly situated employees are called "comparators" under Title VII jurisprudence. In identifying "comparators," the Fifth Circuit has defined "similarly situated employees" narrowly in this context. "[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009). *See also Perez v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("[F]or employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'").

Nearly identical circumstances exist "where the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260. And most importantly, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*

The two other employees who had incidents but were not cited, according to Harris, are white employees Chris Solito ("Solito") and William Crow ("Crow"). However, when asked specifically about the circumstances surrounding the "incident" with Solito, Harris indicated that Solito had a different job in that "he did the eighteen-wheelers, the stakes on the eighteen-wheelers" [Doc. No. 37-2, p. 8], he could only remember one incident and it involved a grapple,

but he did not know what had happened beyond the grapple being damaged, and he did not see

Solito's personnel file to know if Solito was disciplined for the incident [Id., pp 7-8].

The incident with Crow happened when Crow ran into a pole and knocked the power out

at the mill [Doc. No. 37-2, p.10]. However, Drax shows that Crow was the trainer over the entire

wood yard when this incident occurred, and that Crow and Harris did not have the same job or

responsibilities, or comparable violation histories [Id.]. Further, Drax disciplined Crow for this

incident [Doc. No. 37-3, p.4].

The Court finds that Harris has failed to present evidence that the alleged comparators

held the same job that he held, had the same responsibilities, shared the same supervisor or had

their employment status determined by the same person. Thus, there is no evidence of a "nearly

identical" situation to that of Harris.

Therefore, Harris has not established a *prima facie* case of race discrimination under one

of the elements laid out in the McDonnell Douglass framework. Accordingly, the Court finds

that Harris has failed to carry his burden of establishing a *prima facie* case of discrimination.

Drax is entitled to summary judgment dismissing Harris's claims.

### 3.    Hostile Work Environment

Harris has also asserted a hostile work environment claim. In order to make out a *prima*

*facie* case of hostile work environment, Harris must demonstrate that: (1) he belongs to a

protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based

on a protected characteristic; (4) the harassment affected a term, condition, or privilege of his

employment; and (5) his employer knew or should have known of the alleged harassment and

failed to take prompt remedial action. *Brooks v. Firestone Polymers, L.L.C.,* 640 F. App'x 393,

399 (5th Cir. 2016).  Failure to prove any of these essential elements is fatal to his claim.

*Anderson v. YRC, Inc.*, 742 F. App'x 27 (5th Cir. 2018) (Mem. Op.).

With regard to the fifth factor, under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Vance v. Ball State University*, 570 U.S. 421, 424 (2013).

Harris claims that he was subjected to discrimination through his employment at Drax, but when asked for examples of discriminatory behavior, he was unable to provide evidence of any discriminatory conduct of which anyone in Human Resources or management at Drax was aware.  Harris only provided one example of one comment that he found to be racist, which was when Cooper allegedly said that "a monkey could do" the job of another African- American employee.  [Doc. No. 30-4, p. 11].   Harris did not complain about this interaction to Human Resources or to anyone in upper management.  [*Id*., p. 13]. Moreover, he did not even tell Cooper he was offended by the comment or that he thought Cooper was a racist, he merely told Cooper that he thought Cooper should call a meeting to "clear the air" following the comment. [*Id*., p. 12].

When asked why he thought he was terminated, Harris responded that "it was because of the race issue and the harassment issue and [Cooper] made it a hostile environment," but Harris did not provide concrete examples of a hostile work environment beyond his assertion that Cooper had "harassed" him by "hollering" at him for not performing his job correctly. [*Id*., p. 15] Harris also specified that Cooper did not have the authority to terminate him [*Id*., p 19], and Cooper stated in his Declaration that he did not request that Harris to be terminated [Doc. No. 30-5, p. 1].

Here, Harris has offered no summary judgment evidence to prove at least three of these essential elements.

First, he has offered nothing to show that he was subjected to unwelcome harassment based on his race. Second, Harris has offered nothing to show that the alleged harassment affected a term, condition, or privilege of his employment. Title VII protects employees from conduct that is "severe or pervasive enough" to "create a work environment that a reasonable person would find hostile or abusive." *Lister v. Nat'l Oilwell Varco, L.P*., No. CIV.A. H-11-01, 2013 WL 5515196, at *28 (S.D. Tex. Sept. 30, 2013). Finally, Harris has not shown that his employer knew or should have known of any alleged harassment and failed to take prompt remedial action to address and correct the alleged harassing behavior. Harris never complained of illegal discrimination or harassment.

Therefore, Harris has failed to raise a genuine issue of material fact for trial.[3]

## III. CONCLUSION

For the foregoing reasons, Drax's Motion for Summary Judgment [Doc. No. 30] is GRANTED. Harris's claims are DISMISSED WITH PREJUDICE in their entirety.

---

[3] The Court need not reach Drax's remaining arguments.

MONROE, LOUISIANA, this 26th day of November, 2019.

          **TERRY A. DOUGHTY**
          **UNITED STATES DISTRICT JUDGE**